COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-101-CR
  
  
LORRIE 
ANNETTE VALENTICH                                                APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Lorrie Annette Valentich pled guilty to felony driving while intoxicated (DWI) 
and was sentenced to six years’ confinement in the Institutional Division of 
the Texas Department of Criminal Justice.  She preserved her right to 
appeal from the denial of her motion to suppress. In three issues, Appellant 
challenges the trial court’s denial of her motion to suppress evidence 
obtained from the stop and investigative detention of her person.  Because 
we hold that the trial court did not abuse its discretion in denying the motion, 
we affirm the trial court’s judgment.
Background 
Facts
        Officer 
Cox, a Flower Mound police officer, received a call while he was on duty from a 
tipster reporting that Appellant was intoxicated.  The tipster gave the 
officer Appellant’s name and physical description and her vehicle’s 
description and license plate number.  At trial, Officer Cox testified that 
he did not remember the name of the person making the report, but that he 
believed that it was Appellant’s ex-husband and that he thought the tipster 
had identified himself by name at the time of the tip.  No interview, other 
than the phone conversation, was conducted with the tipster.  There was no 
evidence about where the call was made from or what specifically the informant 
claimed to have observed.
        In 
response to the tip, Officer Cox went to the Point After North Bar parking lot, 
from which he saw Appellant’s vehicle exiting.  He followed the vehicle 
from the bar parking lot onto Garden Ridge Road.  On the poorly maintained 
two-lane road, Appellant’s vehicle wove in its own lane, drifting into the 
opposite lane at least twice.  Officer Cox continued following 
Appellant’s vehicle out of Flower Mound into the City of Lewisville. In 
Lewisville, the vehicle, now in the middle lane of a well maintained divided 
six-lane roadway, continued to weave, touching or crossing the white lines 
separating its lane from the other two lanes traveling in the same direction at 
least three times.  Officer Cox testified that he did not want to stop the 
vehicle on the Flower Mound road because it was unsafe, as it was poorly 
maintained and did not have a shoulder, and also because he decided to give the 
driver the benefit of the doubt until the vehicle was on a better road, which 
occurred in Lewisville.  Officer Cox stopped Appellant in Lewisville and 
ultimately arrested her for DWI.
Discussion of 
Issues
        In 
her first issue, Appellant contends that the trial court abused its discretion 
in failing to suppress the evidence because Officer Cox, relying on an 
unreliable informant, lacked reasonable suspicion.  In her second and third 
issues, Appellant contends that the trial court abused its discretion in failing 
to suppress the evidence because the “hot pursuit” doctrine does not apply 
and because Officer Cox did not comply with Article 14.03(g) of the Texas Code 
of Criminal Procedure.  The issues before this court are (1) whether 
Officer Cox had reasonable suspicion to detain Appellant and (2) whether he 
could lawfully do so outside the jurisdiction of Flower Mound, the city that 
employed him.
Reasonable 
Suspicion
        In 
her first issue, Appellant contends that Officer Cox did not have reasonable 
suspicion because he was relying on a tip lacking sufficient indicia of 
reliability.  Specifically, the tipster was her ex-husband, not a neutral 
citizen, and there was no evidence that he observed Appellant firsthand or gave 
any details or a specific description about her wrongdoing.  As this court 
has previously held,
  
To initiate an investigative stop, the investigating officer must possess a 
reasonable suspicion based on specific articulable facts that, in light of the 
officer's experience and general knowledge, would lead the officer to the 
reasonable conclusion that criminal activity is underway and the detained person 
is connected to the activity.  These facts must amount to more than a mere 
hunch or suspicion.
 
The 
reasonableness of a given detention will turn on the totality of the 
circumstances in that particular case.  A tip by an unnamed informant of 
undisclosed reliability standing alone rarely will establish the requisite level 
of suspicion necessary to justify an investigative detention.  There are, 
however, some situations in which an anonymous tip exhibits sufficient indicia 
of reliability to justify the detention.
 
There 
must be some further indicia of reliability, some additional facts from which a 
police officer may reasonably conclude that the tip is reliable and a detention 
is justified. The informant's veracity, reliability, and basis of knowledge are 
highly relevant in determining the value of the caller's report. “Reasonable 
suspicion ... is dependent upon both the content of information possessed by 
police and its degree of reliability.” Both factors--the quality and 
quantity--must be taken into account in determining whether a detention is 
reasonable. “Thus, if a tip has a relatively low degree of reliability, more 
information will be required to establish the requisite quantum of suspicion 
than would be required if the tip were more reliable.”
 
Corroboration 
by the law enforcement officer of any information related by the informant may 
increase the reliability of the information. “[C]orroboration” in this sense 
does not mean that the officer must personally observe the conduct that causes 
him to reasonably suspect that a crime is being, has been, or is about to be 
committed. Rather, corroboration refers to whether the police officer, in light 
of the circumstances, confirms enough facts to reasonably conclude that the 
information given to him is reliable and a temporary detention is justified.
 
Where 
the reliability of the information is increased, less corroboration is 
necessary.
 
A 
detailed description of the wrongdoing, along with a statement that the event 
was observed firsthand, entitles an informant's tip to greater weight.  A 
tip also deserves great weight if the person put herself in a position to be 
held accountable for her intervention.  Furthermore, a person who is not 
connected with the police or who is not a paid informant is considered 
inherently trustworthy when he advises the police that he suspects criminal 
activity has occurred or is occurring.[1]
 
        Officer 
Cox received information that Appellant was intoxicated from an informant who 
provided his name and his relationship to Appellant, although Officer Cox did 
not know him personally and did not remember his name at trial. Appellant’s 
vehicle was at the bar as apparently reported by the informant.  The 
informant’s descriptions of the vehicle and its license plate number matched 
Officer Cox’s observations.  But the evidence does not show that the 
tipster gave specific evidence of the offense itself.  We therefore hold 
that the tip itself was not sufficient to provide Officer Cox with reasonable 
suspicion that Appellant had committed, was committing, or was about to commit a 
crime.  The tip in this case allowed the officer to focus his attention on 
a particular vehicle leaving a bar.
        Officer 
Cox followed Appellant’s vehicle from the parking lot of the bar and observed 
erratic driving.  Giving her the benefit of the doubt, he did not pull her 
over until he observed her driving erratically on a roadway that was in 
sufficiently good repair not to be the suspected cause of the erratic 
driving.  We hold that Officer Cox’s own observations of the car leaving 
a bar and driving erratically provided reasonable suspicion for the DWI stop.[2]  Because the tip was not necessary to generate 
reasonable suspicion, we overrule Appellant’s first issue.
Officer’s 
Authority to Arrest Appellant Outside His Jurisdiction
        In 
her second issue, Appellant contends that the hot pursuit doctrine does not 
apply to justify the officer’s arresting her outside the city lines of Flower 
Mound, his employer.  The Texas Court of Criminal Appeals has held that a 
police officer does not have authority outside his jurisdiction to detain a 
person for a mere traffic offense.[3]  In Kurtz, 
the trial court found that the only possible offenses the arresting officer may 
have observed were traffic offenses; therefore the Texas Court of Criminal 
Appeals construed this as a finding that DWI was not a possible offense that the 
arresting officer initially observed.[4]  While 
the instant case is very close to the facts in Kurtz, it differs in one 
significant aspect—Officer Cox testified that he detained Appellant to 
“investigate further the possibility of her being intoxicated,” and his 
testimony shows that that was the offense he suspected her of from the time he 
saw her driving away from the bar parking lot.  There is no evidence that 
Officer Cox detained Appellant for a mere traffic offense.
        Because 
Officer Cox observed Appellant’s vehicle leaving a bar parking lot and 
observed her erratic driving, he had reasonable suspicion to believe that he was 
detaining her originally for the offense of driving while intoxicated.  
Officer Cox observed Appellant within the city limits of both Flower Mound and 
Lewisville.  At the time of the offense, Article 14.03(d) of the Texas Code 
of Criminal Procedure provided:
  
A peace officer who is outside his jurisdiction may arrest, without warrant, a 
person who commits an offense within the officer’s presence or view, if the 
offense is a felony, a violation of Title 9, Chapter 42, Penal Code, a breach 
of the peace, or an offense under Section 49.02, Penal Code.  A peace 
officer making an arrest under this subsection, shall, as soon as practicable, 
after making the arrest, notify a law enforcement agency having jurisdiction 
where the arrest was made.  The law enforcement agency shall then take 
custody of the person committing the offense and take the person before a 
magistrate in compliance with Article 14.06 of this code.[5]
 
 
        Driving 
while intoxicated is a breach of the peace.[6]  
Consequently, under the statute in effect at the time of the offense, Officer 
Cox had authority to detain Appellant without a warrant.[7]  
Finally, Officer Cox was authorized to detain Appellant because he had 
reasonable suspicion to believe he was observing a breach of the peace, that is, 
driving while intoxicated, and because he pursued her from his lawful 
jurisdiction in Flower Mound a very short distance into Lewisville.  
Consequently, the hot pursuit doctrine technically applies.[8]  
We overrule Appellant’s second issue.
No Notification 
to Lewisville Police Department
        Appellant 
also argues that the evidence should have been suppressed because Officer Cox 
did not comply with Article 14.03 in that he did not notify local law 
enforcement of the arrest.[9]  This court has 
already held that a violation of this notice provision does not require 
suppression of evidence because the notice provision is administrative in 
nature.[10]  We overrule Appellant’s third 
issue.
    Conclusion
        Having 
overruled Appellant’s three issues, we affirm the trial court’s judgment.
 
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
  
   
PANEL 
B:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 16, 2005


NOTES
1.  
Pipkin v. State, 114 S.W.3d 649, 653-55 (Tex. App.—Fort Worth 2003, no 
pet.) (citations omitted).
2.  
See Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Pipkin, 
114 S.W.3d at 653.
3.  
State v. Kurtz, 152 S.W.3d 72, 77 (Tex. Crim. App. 2004).
4.  
Id. at 79.
5.  
Act effective Sept. 1, 1994, 73rd Leg., R.S., ch. 900, § 3.02, 1993 Tex. Gen. 
Laws 3715 (amended 2003) (current version at Tex. Code Crim. Proc. Ann. art. 14.03(d) 
(Vernon 2005)).
6.  
Gallups v. State, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004); Romo v. 
State, 577 S.W.2d 251, 253 (Tex. Crim. App. 1979).
7.  
See Act effective Sept. 1, 1994, 73rd Leg., R.S., ch. 900, § 3.02, 1993 
Tex. Gen. Laws 3715 (amended 2003) (current version at Tex. Code Crim. Proc. Ann. art. 14.03(d) 
(Vernon 2005)).
8.  
See Yeager v. State, 104 S.W.3d 103, 107 (Tex. Crim. App. 2003) (“Under 
the ‘hot pursuit’ doctrine, the relevant consideration in this case is 
whether the initial ‘pursuit’ was ‘lawfully initiated on the ground of 
suspicion.”).
9.  
See Tex. Code Crim. Proc. Ann. 
art. 14.03(g) (Vernon 2005).
10.  
Bachick v. State, 30 S.W.3d 549, 553 (Tex. App.—Fort Worth 2000, pet. 
ref’d).